# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRYL ANTHONY WARREN,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 318968
Kent Circuit Court
LC No. 12-005712-FC

---

Before: OWENS, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of armed robbery, MCL 750.529, one count of first-degree home invasion, MCL 750.110a, one count of conspiracy to commit armed robbery, MCL 750.157a, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

This case involves a home invasion allegedly conspired by defendant and four other men to rob a medical marijuana user of his plants and other medications, as well as some jewelry and electronics. One of the codefendants dated the daughter of one of the occupants of the home, and provided information regarding the layout and contents of the home. Defendant raises issues in a brief filed by appellate counsel, as well as in propria persona in his supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4.

## I. APPELLATE BRIEF ISSUES

## A. OTHER ACTS EVIDENCE

First, defendant argues in his appellate brief filed by counsel that the trial court erred by admitting evidence of defendant's prior conviction of accessory after the fact to armed robbery.[1] We disagree. We review a trial court's decision whether to admit or exclude evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). We review

---

[1] Defendant also challenges, for similar reasons, the trial court's decision to admit his prior conviction in his supplemental brief.

de novo preliminary questions of law, such as whether a rule of evidence precludes admission. *Id.*

MRE 404(b)(1) provides,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The Supreme Court "unanimously confirmed that the opinions in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205; 520 NW2d 338 (1994), *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998), and *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000), 'continue to form the foundation for a proper analysis of MRE 404(b).' " *Mardlin*, 487 Mich at 609 n 6, quoting *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004). The Court provided the following MRE 404(b) analysis, summarizing the principles set forth in those cases:

To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is not simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character. Evidence is inadmissible under this rule only if it is relevant solely to the defendant's character or criminal propensity. Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice...." MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes. [*Mardlin*, 487 Mich at 615-616 (citations omitted).]

The first inquiry, whether the prosecutor showed that defendant's prior conviction is relevant to a proper noncharacter purpose under MRE 404(b)(1), requires us to evaluate the materiality and probative value of the evidence. *Crawford*, 458 Mich at 388. "Materiality is the

requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Id.*

In this case, the prosecutor sought to admit evidence regarding defendant's prior conviction to show defendant's intent, knowledge, and plan or scheme in committing an act. The prosecutor noted that the defense's theory was that defendant never intended to participate in the armed robbery, he only agreed to go to the scene, and left the scene before his codefendants committed the crime. Armed robbery is a specific intent crime that requires the prosecution to show that defendant intended to permanently deprive the owner of the property. *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995). Additionally, the crime of first-degree home invasion may be established by showing, among other things, that defendant broke and entered the dwelling intending to commit a felony. MCL 750.110a; *People v Baker*, 288 Mich App 378, 384-385; 792 NW2d 420 (2010). "It is well established in Michigan that all elements of a criminal offense are 'in issue' when a defendant enters a plea of not guilty." *Crawford*, 458 Mich at 389. Therefore, defendant's intent and knowledge were material to a fact of consequence, specifically to show that he committed all the elements of the charged offenses beyond a reasonable doubt.

"The probative force inquiry asks whether the proffered evidence tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Crawford*, 458 Mich at 389-390. Any tendency is sufficient, but under MRE 404(b), the evidence "truly must be probative of something *other* than the defendant's propensity to commit the crime." *Id.* at 390. For example, in *Crawford*, the question was "whether the prosecutor carried its burden of demonstrating that the defendant's prior conviction establishes some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in this case, the defendant's knowledge of the presence of cocaine and his intent to deliver it." *Id.* at 391.

In this case, the prosecution sought to admit the evidence of defendant's prior conviction to show that the conduct was very similar to the conduct of the charged offenses, in order to show defendant's intent and knowledge. The similarities between the past conduct and the charged offenses were striking, as to establish a sufficient factual nexus between the two. *Crawford*, 458 Mich at 395-396. There was testimony that in both cases, defendant orchestrated the plan. Specifically, he acted with his cousin and recruited others to help, he drove the car and denied involvement in the act, he had inside information regarding the dwellings, and he went out of his way to silence the others involved while in jail. Further, in both cases phones were removed from the dwellings so the victims could not call the police and the suspects wore socks on their hands. Thus, the proffered evidence was highly probative to show that defendant employed a similar plan in doing an act in this case, see *Mardlin*, 487 Mich at 621, and to overcome the improper inference of character, see *Crawford*, 458 Mich at 391. Therefore, the trial court did not abuse its discretion in determining that the prosecutor established that defendant's prior conviction was relevant to a proper noncharacter purpose under MRE 404(b)(1).

However, in deciding to admit the proffered evidence, the trial court did not address the second inquiry, i.e., whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under MRE 403. *VanderVliet*, 444 Mich at 74-75. Nevertheless,

we conclude that although the trial court was required to consider the prejudicial effect of the evidence, the failure to do so was harmless error. Specifically, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403 does not prohibit prejudicial evidence. Rather, it prohibits evidence that is unfairly prejudicial. *Crawford*, 458 Mich at 398. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.*

As discussed, in this case, the strong similarities between the past conduct and conduct of the charged offenses was highly probative to show that defendant employed a similar plan in doing an act in this case. Although the conduct leading to defendant's prior conviction occurred in 2001, given the similarities between the past conduct and the conduct of the charged offenses, the factual relationship of the evidence was not too remote to draw a permissible intermediate inference of defendant's intent in the present case. Cf. *id.* at 395-396 (finding that where the past conduct was factually dissimilar, the factual relationship between the prior conviction and charged offense was too remote for the jury to draw a permissible intermediate inference of the defendant's intent). In this case, the strong similarities between the conduct likely overshadowed any impermissible character evidence.

Further, although the prosecutor did emphasize defendant's prior conviction during closing argument to show the similarities to the charged offenses and to argue that defendant was the mastermind in the present case, unlike in *Crawford*, the evidence was not "paraded" in front of the jury throughout the entire trial. *Crawford*, 458 Mich at 400 n 17. Rather, the evidence was not presented until the last day of the seven-day trial, and the first six days involved the testimony of numerous witnesses to the charged offenses. Moreover, the prosecutor gave a long closing argument in which she detailed all the other evidence presented and argued that there was sufficient evidence in the witnesses' testimony to convict defendant beyond a reasonable doubt. Additionally, the trial court provided limiting instructions to the jury before the testimony regarding defendant's prior conviction and in the closing jury instructions.

Finally, there was sufficient evidence to convict defendant beyond a reasonable doubt without the proffered evidence. As stated in *Crawford*, "Error requires reversal only if it is prejudicial. The prejudice inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Crawford*, 458 Mich at 399-400 (internal quotations and citation omitted). The prosecution presented approximately 15 witnesses who could link defendant to the charged offenses. Given that credibility is for the jury to decide, *People v Unger (On Remand)*, 278 Mich App 210, 222; 749 NW2d 272 (2008), these witnesses provided substantial evidence to prove defendant guilty of the charged offenses beyond a reasonable doubt, without the proffered evidence. Therefore, we conclude that the trial court did not abuse its discretion by admitting evidence of defendant's prior conviction under MRE 404(b).

## B. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor committed misconduct during rebuttal closing argument by appealing to the jury's civic duty when she stated, "don't let [defendant] get away with it." We disagree. Because defendant failed to preserve this issue for appellate review by timely and specifically objected to the error below, *Unger*, 278 Mich App at 234-235, we review

this issue for plain error affecting defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Reversal is only warranted if defendant was actually innocent and the plain error caused defendant to be convicted or "if the error 'seriously affected the fairness, integrity, or public reputation of judicial proceedings,' regardless of defendant's innocence." *Id.* at 454, quoting *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64.

The alleged misconduct occurred during the prosecutor's rebuttal closing argument:

> In the end of the closing argument by the defense, the thing that struck me the most like a hammer to the head was what a waste. What a waste, huh? A mind is a beautiful thing or a terrible thing to waste. This defendant clearly is an intelligent, articulate guy. He unfortunately has used his God-given talent to commit crime.
>
> And he manipulated and schmoozed and talked and whatever his way into accessory after the fact the first time. But he won't do that again. He obviously didn't get what he wanted, or we wouldn't be here.
>
> *Don't let him get away with this again.* Find him guilty of armed robbery, home invasion, and conspiracy to commit armed robbery, and felony firearm, because he had every chance to pull out if he wanted to.
>
> And this is the man—this is the man who called the shots, and he is still doing it to this very day. *Don't let him get away with it.* Find him guilty. [Emphasis added.]

While prosecutors are afforded great latitude in their arguments, "it is improper for a prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *Thomas*, 260 Mich App at 455-456. By saying, "don't let him get away with it," the prosecutor, to an extent, did cross the line into a civic duty argument. However, a prosecutor's remarks must be evaluated in light of defendant's arguments, *id.* at 454, and "an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

Defendant's theory was that he was not involved in the armed robbery and home invasion, and that while he agreed to drive to the scene, he left when he realized what the others were going to do. Defense counsel read a closing argument prepared by defendant, in which he accused most of the witnesses of lying and accused the prosecution of intimidating witnesses. He also used the closing argument to provide his own account of what happened, despite the fact he did not testify, and in doing so, he also referenced many statements and facts not in evidence.

Further, he requested that the jury never lose sight of the goal, which is justice, and to "send this innocent man home to his family." Therefore, when taken in context, it seems the prosecutor was attempting to respond to defendant's closing argument by arguing that defendant was essentially the mastermind and knew how to manipulate the system, given that the evidence showed that he coordinated an armed robbery years prior, yet received a lesser conviction. The prosecutor's statements were responsive to defendant's arguments and a fair comment on the evidence presented. *Thomas*, 260 Mich App at 456. The statements were made during rebuttal and did not appear to be an attempt by the prosecutor to inject issues broader than guilt or innocence or to encourage jurors to suspend their powers of judgment. *Id.* Finally, any minimal prejudice that could have been caused by these brief statements was cured by the trial court's instructions to the jury. *Id.* Accordingly, we conclude that defendant has failed to establish an instance of prosecutorial misconduct warranting relief.

## II. SUPPLEMENTAL BRIEF ISSUES

## A. PROSECUTORIAL MISCONDUCT

Defendant also asserts claims of prosecutorial misconduct in his supplemental brief. Because defendant failed to preserve any of the claims at trial, our review is for plain error affecting defendant's substantial rights. *Thomas*, 260 Mich App at 453-454. We conclude that defendant has failed to establish any instances of prosecutorial misconduct warranting relief.

Defendant first argues that the prosecutor knew that one of the codefendants, Nicholas Green, falsified the details of his plea agreement and rather than correct the error the prosecutor bolstered it. A "prosecutor may not knowingly use false testimony to obtain a conviction" and has a duty to correct false testimony, especially as it relates to a witness's credibility. *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled on other grounds by *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014).

At trial, Green testified that he pleaded guilty to conspiracy to commit armed robbery and was sentenced to serve 4 to 40 years in prison. He testified that he thought he only "got a few months off" for testifying, because his minimum sentencing guidelines were 51 to 85 months. On appeal, defendant argues that this statement was a "gross misrepresentation and wholly false." However, other than to state that Green had other charges dismissed, defendant does not explain how much of a lesser sentence Green received for testifying. On this record, Green did receive a downward departure of a few months when his minimum sentence of 4 years is compared to the minimum guidelines range of 51 months. Accordingly, there is no indication that Green testified falsely with regard to his plea deal. Further, even if Green gave false testimony, there is not a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (internal quotation marks and citation omitted). The fact that Green received leniency for testifying was still made known to the jury and directly affects his credibility.

Second, defendant argues that the prosecutor knowingly misrepresented his prior conviction when obtaining its admissibility under MRE 404(b), because she had a duty to know the evidence. However, on this record, there is no indication that the prosecutor intentionally misrepresented defendant's prior conviction. When defense counsel argued the motion to

exclude the evidence under MRE 404(b), even she did not reference the correct conviction. It was not until a week later, that both the prosecutor and defense counsel reviewed the file and learned that defendant had pled guilty to accessory after the fact and not conspiracy to commit armed robbery. Further, as the trial court correctly noted, a conviction was not necessary to admit evidence of defendant's past conduct under MRE 404(b). Accordingly, there is no indication that defendant was denied a fair trial in this regard.

Third, defendant argues that prosecutor mischaracterized the evidence numerous times. To support this argument, defendant asks this Court to compare numerous transcript citations of statements made during the prosecutor's opening statement and closing argument to the actual testimony. "Opening statement is the appropriate time to state the facts that will be proved at trial." *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010). A review of the prosecutor's opening statement does not indicate misconduct. Rather, "the prosecutor was simply summarizing the anticipated testimony" and "providing a fair view of what the evidence would show." *Id.*

Likewise, a review of the prosecutor's closing argument does not indicate misconduct. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66 (internal citations omitted). The record shows that the prosecutor was simply arguing the evidence and any reasonable inferences. While some of the citations to the testimony that defendant provided did not support what the prosecutor said during opening statement or closing argument, a review of the record indicates that the prosecutor's characterization of the evidence came from testimony of other witnesses not cited by defendant and reasonable inferences from all of the evidence presented. Simply because those inferences may be different than defendant's inferences does not make them unreasonable as to amount to misconduct.

Fourth, defendant argues that the prosecutor intimidated witnesses. He first asserts that the prosecutor forced all the witnesses to testify at the investigative subpoena hearings by threatening them with perjury charges. Defendant cites the transcripts of some of the witnesses' investigative subpoena hearings, but fails to provide those to this Court for review. As the appellant, defendant has the burden "of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Therefore, we decline to address this claim.

Defendant also asserts that the prosecutor intimidated one witness, Monique Gilmore, into testifying at trial. However, the record does not support this assertion. From the beginning of her testimony, it was clear that Gilmore was hesitant to testify and would only respond with one or two words. The prosecutor was having a difficult time getting her to answer the questions in their entirety, and after many attempts, the trial court allowed the prosecutor to ask leading questions, and essentially treat the witness as a hostile witness, which is permitted under MRE 611(d)(1). On appeal, defendant does not specifically challenge this decision.

Further, it is evident from the record that any hesitancy Gilmore displayed in testifying was caused by defendant's behavior and not a result of intimidation by the prosecutor. The record reveals that defendant called Gilmore fifty times since he was incarcerated, blaming her

for putting him in jail. Based on comments made by the prosecutor during Gilmore's testimony, it is evident that while testifying, Gilmore would look to defendant with hesitancy before speaking. Moreover, Gilmore testified on direct examination that she did not feel pressured to testify at trial. Although she stated on cross-examination that she felt pressure to testify during the investigative subpoena hearing, she also stated that she answered the questions truthfully, with the exception of what she meant by the phrase "hit a lick," and that she did not "find herself just agreeing with what [the prosecutor and detective] said." Accordingly, on this record, there is no indication that the prosecutor intimidated Gilmore into testifying.

Fifth, defendant argues that the prosecutor appealed to the jury's sympathy during opening statement by providing the background of the victims and what type of people they were, by stating that one of the victims had scoliosis and is permanently disabled, and by stating that the victims were terrorized by the robbery. However, when read in context, it appears that the prosecutor provided the background information of the victims to show that one of the victims was legally authorized to grow medical marijuana and that the victims were not the type of people to be involved in illegal drug usage. There is no indication that the prosecutor's statement was a blatant appeal to the jury to sympathize with the victims, and the statements were "not so inflammatory as to prejudice defendant." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001).

Defendant also argues that the prosecutor injected race into the trial during opening statement by repeating a comment made by one of the codefendants, Darell Boyd to Green that Boyd regretted not "killing the honkey." However, "the prosecutor was simply summarizing the anticipated testimony," *Ericksen*, 288 Mich App at 200, and defendant does not explain how this isolated statement that reflected the evidence injected race into the trial.

Defendant further argues that the prosecutor used the opening statement to comment on the credibility of witnesses, alluded to facts not in evidence, and manipulated evidence. However, defendant provides no citations to the record to support these assertions. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, we decline to address this issue.

Moreover, the trial court instructed the jury that the attorneys' statements were not evidence, which is sufficient to cure any minimal prejudice that might have been caused by the statements made during the prosecutor's opening statement. *Thomas*, 260 Mich App at 456.

Finally, defendant argues that throughout trial the prosecutor did not allow the jury to evaluate the evidence for themselves, bolstered witness testimony, vouched for the credibility of the witnesses, expressed her personal belief as to the credibility of the witnesses, and provided her opinion on disputed facts. To support these assertions, defendant provides over 100 citations to the record, but fails to explain how each citation referenced amounts to prosecutor misconduct. We will not rationalize the basis for defendant's claims; therefore, we decline to address this issue. *Kelly*, 231 Mich App at 640-641.

In sum, we conclude that defendant has failed to establish any instances of prosecutorial misconduct warranting relief.

## B. INACCURATE TRIAL TRANSCRIPTS

Next, defendant asserts that a remand is necessary to correct omissions in the trial transcripts. We disagree. There is presumption that the transcripts provided are accurate. This Court has stated,

> to overcome the presumption of accuracy and be entitled to relief, a petitioner must satisfy the following requirements: (1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief pursuant to subchapters 7.200 and 7.300 of our court rules. [*People v Abdella*, 200 Mich App 473, 476; 505 NW2d 18 (1993).]

First, defendant did not seasonably seek relief with the trial court. There is no indication that the defendant demanded a review of the audiotapes or even brought the issue to the trial court's attention. See *id.* Further, defendant did not provide any independent corroboration of the asserted inaccuracies. This Court observed that a defendant may provide independent corroboration of an asserted inaccuracy by submitting "affidavits of witnesses, trial spectators, police officers, court personnel, or attorneys," or through "references to police reports or preliminary examination transcripts, or perhaps to trial circumstances that demonstrate the position of the petitioner, such as noting that if the witness whose testimony is claimed to have been transcribed inaccurately had actually testified as transcribed, then the final arguments would have been different." *Id.* at 476 n 2. Finally, other than to assert that he wanted to use the omissions to show that the prosecution vouched for the credibility of witnesses and intimidated witnesses, and to argue defense counsel was ineffective, defendant does not explain on appeal how the inaccuracies adversely affect his ability to secure postconviction relief. Essentially, defendant only seeks a remand, which this Court already denied,[2] and because defendant has not asserted any alleged inaccuracy with specificity, or submitted any affidavit or other offer of proof in support of the existence of any specified inaccuracy, he has not demonstrated that a remand is necessary. See MCR 7.211(C)(1)(a).

## C. UNLAWFUL SEARCH AND SEIZURE

Next, defendant argues that he was subjected to an unlawful search and seizure when the detectives searched his jail cell and confiscated confidential attorney-client communications that revealed his defense strategy. We disagree. "A determination regarding whether a party has received due process is a question of law reviewed de novo." *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007).

---

[2] *People v Warren*, unpublished order of the Court of Appeals, entered November 13, 2014 (Docket No. 318968).

Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. However, it is well-settled "that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v Palmer*, 468 US 517, 530; 104 S Ct 3194; 82 L Ed 2d 393 (1984). This rule has been extended to "pretrial detainees and inmates confined in jails." *People v Phillips*, 219 Mich App 159, 162; 555 NW 2d 741 (1996). Thus, to the extent defendant argues that he was subjected to an unreasonable search in his jail cell, his argument is without merit.

However, government intrusion into confidential attorney-client communications may violate a defendant's right to the effective assistance of counsel under the Sixth Amendment. *Weatherford v Bursey*, 429 US 545, 558; 97 S Ct 837; 51 L Ed 2d 30 (1977). This depends on whether the intrusion was purposeful and whether the prosecution obtained evidence of the defense strategy. *Id.*; see also *Arizona v Pecard*, 196 Ariz 371, 377; 998 P 2d 453 (1999).

In this case, although the intrusion into defendant's cell was intentional, the purpose was not to intercept attorney-client communications, but to look for letters exchanged between the codefendants in the case. As soon as the prosecutor was made aware via a telephone call from the detective conducting the search that some of the documents recovered from defendant's jail cell were police reports and witnesses statements, and there were also documents that contained defendant's handwritten notes, the prosecutor specifically instructed the detective to immediately seal any documents that may resemble legal correspondence and turn it over to defense counsel. The documents were out of defendant's possession for two days, and defendant acknowledged that nothing was missing. There is no indication on this record that the prosecutor received any evidence of the defense strategy or confidential attorney-client communications. *Weatherford*, 429 US at 558.

D. RIGHT TO SPEEDY TRIAL

Next, defendant argues that he was denied his constitutional right to a speedy trial. We disagree. Whether a defendant is denied the right to a speedy trial is an issue of constitutional law that this Court reviews de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).

Criminal defendants are guaranteed the right to a speedy trial, US Const, Am VI, Const 1963, art 1, § 20, which is enforced by statute, MCL 768.1, and court rule, MCR 6.004(A). *Williams*, 475 Mich at 261. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id.* This Court balances four factors, known as the *Barker*[3] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 261-262. Prejudice is presumed with a delay of 18 months or more. *Id.* at 262.

---

[3] *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

First, the length of defendant's delay was approximately 14 months; therefore, prejudice is not presumed.

Second, the reasons for the delay are most attributable to delays inherent in the court system. The trial was originally scheduled for January 21, 2013, but had to be adjourned three times due to the unavailability of the trial judge, who, twice, was in trial on other cases. "Although delays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997), quoting *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993).

Third, defendant never properly asserted his right to a speedy trial. Defendant submitted a handwritten motion and letter requesting a speedy trial that was received by the trial court on January 15, 2013. However, it appears this handwritten motion and letter was sent to the trial judge, as the record contains a letter from the judge to defendant indicating that the judge received defendant's letter requesting a speedy trial, but noted that as the presiding judge he "cannot engage in ex parte communications or consider communications made to him outside the presence of all of the parties." The judge informed defendant that he could not consider his request and that because he was represented by counsel, all communications with the trial court needed to be handled by his attorney. Despite being informed by the trial court, defendant never submitted a motion for a speedy trial through his counsel. Additionally, from the time of the first adjournment to the trial, defendant never objected to any of the delays, and appears to have accepted the trial dates that were offered after each adjournment.

Finally, with regard to prejudice to defendant, this Court has stated that " '[t]here are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense.' " *Williams*, 475 Mich at 264, quoting *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). Defendant argues that but for the delay, his trial strategy would not have been seized while he was incarcerated in jail. Therefore, he essentially argues that the delay caused prejudice to his defense. However, as discussed above, there is no indication that during the search of defendant's jail cell any privileged attorney-client communication, including trial strategy, was read by the prosecution. Nor has defendant shown how he was unable to adequately prepare his case due to the delay. See *Williams*, 475 Mich at 264. Accordingly, we conclude that defendant's constitutional right to a speedy trial was not violated.

## E. EVIDENTIARY ERRORS

Next, defendant argues that the trial court abused its discretion in making various evidentiary rulings.[4] We disagree. We review a trial court's rulings regarding evidentiary questions for an abuse of discretion. *Mardlin*, 487 Mich at 614.

First, defendant argues that the trial court denied defendant's due process rights and right to present a defense when it prohibited defendant from admitting investigative subpoena transcripts into evidence. Defendant argues that the transcripts would have allowed the jury to properly weigh the evidence and were very important to the defense's closing argument. However, defendant merely asserts that the transcripts were admissible. He provides no authority to support his position and does not explain how the trial court's ruling was error. Therefore, we need not consider this argument. See *Kelly*, 231 Mich App at 640-641. However, we conclude that, based on the record, the trial court did not abuse its discretion in declining to admit the transcripts. At trial, when seeking their admission, defense counsel failed to show how the transcripts were relevant, i.e., how they had "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," MRE 401, and failed to argue how the transcripts, as extrinsic evidence of a prior inconsistent statement, would be admissible under MRE 613(b).

Next, defendant argues that the trial court erred when it prohibited defendant from inquiring into the details of an affidavit even though the prosecution used the affidavit to attack defendant's character as a manipulator. The affidavit in question was given to Monique Gilmore by defendant to sign, essentially recanting all statements made to the police regarding defendant's involvement in the robbery. Gilmore admitted on direct examination that she signed the affidavit, which was allegedly written by defendant. On cross-examination, defense counsel sought to ask Gilmore questions regarding the content of the affidavit and to comment on its truthfulness. The prosecutor objected, arguing that there was no foundation to read from the affidavit when the witness had not written it. The trial court agreed and sustained the objection.

Defendant does not explain how this ruling was error and does not cite any authority to support his argument. Therefore, we need not consider this argument. See *Kelly*, 231 Mich App at 640-641. However, we note that defense counsel wanted Gilmore to testify as to the truthfulness of the statements made in the affidavit, which was not written by her. This is a classic example of hearsay. MRE 801(c). And given that it had not been proven at trial whether defendant actually wrote the affidavit, the statements in the affidavit could not be admitted under MRE 801(d)(2), as a party's own statement. Therefore, there is no indication, on this record, that the trial court abused its discretion in preventing Gilmore from testifying about the contents of the affidavit.

---

[4] We note that although defendant's question presented states that the trial court made rulings that prevented defendant from presenting his defense, in his brief, defendant makes no argument as to how the alleged errors deprived him of a defense.

-12-

Next, defendant argues that the trial court erred by allowing the prosecution to discuss a codefendant's conviction. The transcript citation defendant provides is a series of questions where the prosecutor asks Nicholas Green about contact he has had with the codefendants in the case while incarcerated to determine whether any of the codefendants had threatened Green. The purpose in eliciting this information was to explain why Green had previously written a statement that was inconsistent with his testimony, which Green explained was because he was told by one of the codefendants that a hit would be put out on him.

Defendant asserts that the trial court erred because the evidence had no proper purpose and was overly prejudicial. We disagree. The testimony was offered to show why Green had previously made an inconsistent statement, which was highly relevant to Green's credibility. See *People v King*, 297 Mich App 465, 477; 824 NW2d 258 (2012) ("As the finder of fact, the jury is generally entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony.").

Next, defendant argues that the trial court erred by repeatedly allowing the prosecutor to lead the witnesses to the extent that it was the prosecutor testifying. Defendant cites numerous pages of transcripts where he argues the prosecutor asked leading questions, but does not actually identify specific questions. "[R]eversal is not required simply because leading questions were asked during trial." *Watson*, 245 Mich App at 587. Rather, defendant must "show some prejudice or pattern of eliciting inadmissible testimony." *Id.* (internal quotation marks and citation omitted). There are definitely instances where the prosecutor asked leading questions; however, the trial court sustained defense counsel's objections and asked the prosecutor to rephrase the question. Further, the trial court permitted the prosecutor to ask Monique Gilmore leading questions because, given her hesitancy to testify, it was necessary to develop her testimony, which is proper under MRE 611(d)(1). Given that defendant does not even identify specific leading questions, it is clear that he has failed to demonstrate any prejudice or a pattern of eliciting inadmissible testimony. Therefore, there is no error requiring reversal.

Finally, defendant argues that the trial court also erred by allowing a witness to state his opinion on defendant's guilt. However, the witness defendant refers to, Anthony Lackey, was not asked whether defendant was guilty. Rather, he testified as to what he knew regarding defendant's involvement in the robbery. His testimony that defendant was involved was based on statements made to him by defendant, stolen items he saw in defendant's presence, and the fact that he was asked to participate in the robbery, but he did not do so. Accordingly, the trial court did not err in this regard.

In sum, we conclude that defendant has not identified any evidentiary errors warranting relief.

## F. *BRADY* VIOLATION

Next, defendant asserts a *Brady*[5] violation, arguing that the prosecutor withheld valuable evidence from trial, which included the investigative subpoenas of three witnesses, and the recorded interviews of four other witnesses. We disagree. To establish a *Brady* violation, defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Chenault*, 495 Mich at 155.

Defendant has failed to show that the evidence in question was suppressed. He seems to argue that because defense counsel did not cross-examine the witnesses regarding the investigative subpoenas, that they were clearly withheld from the defense. However, defense counsel sought admission of the transcripts of all the investigative subpoenas at trial. This directly rebuts defendant's claim that investigative subpoenas were withheld.

Additionally, with regard to the recorded interviews, defendant does not even know whether the interviews were recorded. He merely states that the witnesses "all were said to have been recorded while being interviewed," but provides no proof that they actually were. Based on the record, there is no indication that recorded interviews existed. Moreover, two of the witnesses he mentions did not even testify at trial, and defendant provides no argument as to how their interviews were favorable to the accused and why their interviews were material. Therefore, defendant has failed to show that prosecutor suppressed evidence in violation of *Brady*.

## G. *MIRANDA* VIOLATION

Next, defendant argues that he did not effectuate a valid *Miranda*[6] waiver. Defendant argues that he invoked his right to remain silent upon arrest and asked for counsel repeatedly in the interrogation room. He also argues that the detectives "deceptively signed" the rights card when he never agreed to voluntarily talk. He does not argue, however, that his statements were coerced in any way. He simply asserts that his waiver was involuntary. However, defendant has waived any claim of error.

Waiver is defined as "the 'intentional relinquishment or abandonment of a known right.' " *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993). " 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for this waiver has extinguished any error.' " *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), quoting *United States v Griffin*, 84 F 3d 912, 924 (CA 7, 1996). Defense counsel

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[6] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

stipulated at trial that the videotape of defendant's interview showed that defendant was read his rights and initialed the rights card, and defendant did not contest this at trial. This Court has stated, "While the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver may be effected by action of counsel." *Id.* at 218. "[C]ounsel has full authority to manage the conduct of the trial and to decide matter of trial strategy." *Id.* at 218-219. Therefore, stipulating to the contents of a videotape that defense counsel watched is a waiver that could be effected by the action of defense counsel. See *Id.* Accordingly, because defense counsel stipulated that defendant was read his rights and initialed the rights card indicating so, defendant cannot not now claim error on appeal.[7]

### H. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied his right to the effective assistance of counsel in various ways. We disagree. Our review is "limited to mistakes apparent from the record," *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008), because defendant was unable to demonstrate that further factual development of the record necessitated a remand. *People v Warren*, unpublished order of the Court of Appeals, entered November 13, 2014 (Docket No. 318968). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *Brown*, 279 Mich App at 140.

Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See also *Vaughn*, 491 Mich at 669. Defendant must also overcome the strong

---

[7] We also note that there is no indication on this record that defendant did not knowingly and intelligently waive his rights. The detectives who interviewed defendant testified that defendant did not ask for a lawyer when he was arrested; instead, he said, "Take me to jail." The detectives also testified that defendant initialed the advice of rights card that was read to him, which indicated that his rights were read to him and that he waived those rights. Further, defendant's arguments on appeal indicate that he was well aware that he did not have to speak if he wished to have counsel present; yet he acknowledges that he made statements during the interview, despite claiming he kept insisting on counsel and knew that he did not have to speak. See *People v Cheatham*, 453 Mich 1, 29; 551 NW2d 355 (1996) ("To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him.").

presumption that counsel's performance constituted sound trial strategy. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

First, defendant argues that counsel was ineffective for failing to investigate a witness, Edwin Gomez-Rivera. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "Similarly, '[t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome.' " *Russell*, 297 Mich App at 717, quoting *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004).

Defendant contends that Green lived with Rivera at the time of the robbery, and when Green arrived at home later that evening, he told Rivera that defendant never committed the robbery. Defendant argues that he was deprived of a substantial defense because Rivera's testimony would have undermined Green's testimony, who was the only person tying defendant to the alleged offenses. However, other than defendant's speculation, defendant has not provided an affidavit or offer of proof indicating what the proposed testimony would have been. *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002).

Further, assuming defendant's claims regarding Rivera's testimony were true, Rivera would have testified regarding an out-of-court statement made by Green. The statement, allegedly indicating that defendant did not commit the robbery, would have been offered to prove that defendant did not in fact commit the robbery. This is a classic example of hearsay testimony. Defendant provides no argument that this hearsay testimony would have been admissible under any of the exceptions provided in the Michigan Rules of Evidence.[8] Therefore, defendant has not overcome the strong presumption that counsel's failure to investigate or call Rivera as a witness was sound trial strategy.

Next, defendant argues that counsel was ineffective for failing to move for a *Walker*[9] hearing, with regard to the validity of his *Miranda* waiver. Defendant's claim depends on whether he can establish a valid basis to move for a *Walker* hearing. A *Walker* hearing is designed to test the voluntariness of a confession. *People v Ray*, 431 Mich 260, 269; 430 NW2d

---

[8] Given that the robbery had ended several hours prior to Green returning home and Green did not have any of the stolen items in his possession, it unlikely that any statements regarding defendant's involvement made to Rivera were made "during the course and in furtherance of the conspiracy" as to fall under MRE 801(d)(2). Further, it would be difficult to admit the statement under any of the exceptions listed in MRE 803, such as present sense impression or excited utterance, given that the robbery and home invasion had occurred hours prior to Green returning to Rivera's townhouse and allegedly stating defendant was not involved in the robbery.

[9] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

626 (1988). However, defendant has failed to prove that a *Walker* hearing was necessary or would have been successful where, as we have determined, the record indicates that defendant's statements were in fact voluntary. Further, although the portion of the interview that was played for the jury was not transcribed or provided to this Court, there is no mention throughout the trial that the tape even contained a confession by defendant, which is what a *Walker* hearing would have addressed. Therefore, defendant has failed to show that counsel was ineffective for failing to move for a *Walker* hearing. See *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003) (stating that defense counsel is not ineffective for failing to make a meritless motion).

Next, defendant argues counsel was ineffective for disclosing the defense strategy to the prosecution a week before trial, thereby violating attorney-client privilege. However, defense counsel revealed the defense to properly argue a motion to sever the trial of defendant and the codefendants, as well as the motion to exclude the other-acts evidence. Defendant merely asserts that there is no case law indicating that defense counsel must disclose the defense to properly argue a 404(b) motion. He does not show how counsel's actions did not constitute sound trial strategy or provide an alternative argument counsel could have made in arguing the two motions. Additionally, there is no indication that counsel violated attorney-client privilege when she only revealed the defense's theory of the case and did not discuss any confidential matters. Therefore, defendant has failed to carry his burden to prove that counsel's actions did not constitute sound trial strategy.

Next, defendant claims that his attorney told him that he could prepare the closing argument for her to read to the jury, which was done over the weekend. Defendant argues that counsel was ineffective for informing the jury that defendant only provided his closing argument shortly before it was read to the jury and that she did not read the argument as if she believed it. However, defense counsel did not tell the jury that defendant provided the argument to her shortly before it was read. Rather, she stated that defendant prepared a summary that he wanted her to share with the jury and that he "put a great deal of thought and effort into this." Although she stated that the two of them were having a discussion throughout the prosecutor's closing argument, it in no way implied that defendant had just given her the statement to read.

Further, there is no indication that counsel did not read the closing argument as if she believed it. Most of the argument was interrupted by the prosecutor's objections, given that there were many statements of facts not in evidence, which then prompted the trial court to provide further instructions to the jury. It is very reasonable to assume that defense counsel had difficulty reading a statement, which was not her own, when she was continuously interrupted. Finally, given that the trial court continuously instructed the jury that the attorneys' arguments were not evidence, there is no indication that counsel's reading of defendant's statement in any way prejudiced defendant or affected the outcome of the trial. Therefore, defendant has failed to show how counsel was ineffective in this regard.

Next, defendant, who is African American, argues that counsel was ineffective for failing to raise a *Batson*[10] challenge. He argues that during the entire jury selection, only four African

---

[10] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

Americans and one Hispanic were seated, and they were also struck by the prosecutor with preemptory strikes. Defendant's claim depends on whether he can establish a valid basis for a *Batson* challenge.

The Equal Protection Clause of the Fourteenth Amendment prohibits a party from exercising a peremptory challenge to remove a prospective juror solely based on race. *Batson v Kentucky*, 476 US 79, 86-87; 106 S Ct 1712; 90 L Ed 2d 69 (1986). In *Batson*, the United States Supreme Court held that the party challenging the peremptory dismissal must first make a prima facie showing of discrimination. *Id.* at 96. To do so, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all of the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. *Id.*

Defendant has failed to establish a prima facie showing of discrimination. First, the fact that defendant claims that only four African Americans and one Hispanic were seated during the entire jury selection process likely indicates that there had been a small number of minorities in the jury venire to begin with. Second, of the five minorities that defendant claims[11] were excused, one was excused for cause by the trial court on agreement of the parties due to a medical condition and scheduled surgery. Of the other four, based on the record, the circumstances do not raise an inference that the prosecutor excluded the prospective jurors on the basis of race. Rather, based on the prospective jurors' statements, there were other very valid reasons as to why the prosecutor may have excused the jurors.

Specifically, one juror stated that he was unsure whether he could convict someone without physical evidence. He also stated that his past drug usage compromised his ability to listen and pay attention to detail. Another juror stated that he was very good friends with a prison warden who was like a mother to him and that he was also convicted of a home invasion at the age of 16, the same crime defendant was on trial for. Another juror stated that his brother was wrongfully convicted in Kent County, where defendant was being tried, of an assault-related crime and spent five years in prison. The last juror stated that he had family members who were convicted of crimes and that he accused someone of a crime who was never convicted. He indicated that these experiences made it uncertain whether he could be impartial and he had a difficult time abiding by the presumption of innocence.

Finally, the prosecutor peremptorily excused other prospective jurors along with the jurors that defendant claims were excused based on race. Presumably, because defendant did not raise a challenge as to those prospective jurors, they were Caucasian. Therefore, on this record, there is no basis for concluding that the circumstances surrounding the peremptory dismissal of any minority juror raised an inference of discrimination, and defendant has not provided evidence to the contrary.

---

[11] The record does not disclose the race of the prospective jurors.

-18-

Notably, although defendant claims that the final jury consisted of all Caucasians, our Supreme Court stated in *People v Knight*, 473 Mich 324, 349; 701 NW2d 715 (2005), "[p]rotecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury. The goal of *Batson* and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of any racial group." Therefore, the mere fact that minorities were not represented on the jury does not provide a basis for raising a *Batson* challenge.

In sum, because defendant has not established a basis for concluding that defense counsel could have raised a valid *Batson* challenge, defense counsel is not ineffective for failing to make a meritless motion or objection. *Goodin*, 257 Mich App at 433.

Next, defendant argues that counsel was ineffective for failing to conduct an independent investigation of defendant's record when arguing the motion to exclude evidence of his prior conviction, which then allowed counsel "to speak into the record a conviction that never occurred." While defense counsel should have known defendant's prior conviction when arguing the 404(b) motion, the fact that she referenced the wrong conviction did not prejudice defendant. The conviction was discussed outside the presence of the jury, and thus, any reference to the wrong conviction would not have affected the outcome of the trial. The other-acts evidence concerned conduct that led to the conviction, and the fact that a conviction even resulted was irrelevant for purposes of admitting the evidence under MRE 404(b). Finally, as far as the record is concerned, the mistake was later corrected by the parties and noted on the record. Therefore, defendant has failed to show defense counsel's actions prejudiced him.

Next, defendant argues that counsel was ineffective for failing to impeach several witnesses. Defendant identifies 13 witnesses and argues that there were written pretrial statements, sworn depositions, police reports, and "case file discovery materials" that would have impeached the testimony of those 13 witnesses. Defendant identifies the testimony which he believes should have been impeached, but fails to identify what evidence would have impeached that testimony. Defendant has failed to sufficiently support his argument; therefore, we need not consider it. See *Kelly*, 231 Mich App at 640-641. Nevertheless, the record indicates that defense counsel cross-examined all the witnesses and attempted to highlight any inconsistencies in their testimony. Simply because defense counsel did not cross-examine the witnesses on all contradictory aspects of their statements does not constitute ineffective assistance of counsel. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987) ("[W]e do not find that failure to impeach [a witness] on all contradictory aspects of his preliminary examination and trial testimony was a serious mistake . . . . Rather, [counsel's] decision not to delve into all the differences constituted a matter of trial strategy for which this Court will not substitute its judgment.").

Finally, defendant argues that counsel was ineffective for failing to raise objections to the various instances of prosecutorial misconduct. Defendant cites over 100 pages of transcripts where he argues that defense counsel should have objected. The first set of transcript citations reference the prosecutor's opening statement. Defendant appears to argue that defense counsel should have objected during the opening statement because the prosecutor manipulated and falsified evidence. However, as discussed *supra*, a review of the prosecutor's opening statement

does not indicate misconduct.  Accordingly, defense counsel is not ineffective for failing to make meritless objections.  *Goodin*, 257 Mich App at 433.

The second set of transcript citations reference various witness testimony.  Defendant appears to argue that there are many instances where the prosecutor manipulated evidence, stated facts not in evidence, and bolstered witness testimony that defense counsel never objected to.  Other than to state in brackets after the referenced page numbers "facts not in evidence" or "manipulation of evidence," for example, defendant fails to explain how each citation referenced amounts to prosecutor misconduct that defense counsel should have objected to.  Because defendant has failed to sufficiently support his argument, we need not consider it.  See *Kelly*, 231 Mich App at 640-641.  Nevertheless, we note that defendant references many of the same citations as he did when asserting that the prosecutor committed misconduct, which as discussed *supra*, there were no instances of prosecutorial misconduct warranting reversal.  Accordingly, defense counsel is not ineffective for failing to make meritless objections.  *Goodin*, 257 Mich App at 433.

For the reasons outlined above, we affirm defendant's convictions.

Affirmed.

/s/ Donald S. Owens
/s/ Kathleen Jansen
/s/ Christopher M. Murray